ARTIM TRANSPORTATION SYSTEM, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 16371.

United States Court of Appeals Seventh Circuit.

June 4, 1968.

George Gregory Mantho, Detroit, Mich., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, John I. Taylor, Jr., Atty., National Labor Relations Board, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Glen M. Bendixsen, Atty., National Labor Relations Board, for respondent.

Before HASTINGS, FAIRCHILD and CUMMINGS, Circuit Judges.

HASTINGS, Circuit Judge.

Petitioner Artim Transportation System, Inc. petitions pursuant to § 10(c) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., for review of an order of respondent National Labor Relations Board issued July 14, 1967. The Board's order, reported at 166 N.L.R.B. No. 87, requires petitioner to offer reinstatement to certain discharged employees and to make them whole with back pay. The Board cross-petitions for enforcement of the order.

Petitioner is an interstate motor carrier. Prior to October, 1965, it operated as Artim & Sons, Inc. (Artim). In October, 1965, pursuant to authority granted by the Interstate Commerce Commission petitioner assumed operation of Steel Transportation Company (Steel Transport), also an interstate motor carrier. Both Artim's drivers and Steel Transport's drivers were represented by Local 142 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Local 142).

The relevant provisions of the collective bargaining agreement between petitioner and Local 142 are the following:

"Article 43.

Grievance Machinery and Union Liability

"Section 1. The Union and the Employers agree that there shall be no strike, lockout, tie-up, or legal proceedings without first using all possible means of settlement, as provided for in this Agreement, of any controversy which might arise. Disputes shall first be taken up between the

Employer and the Local Union involved. Failing adjustment by these parties, the following procedure shall then apply:

(a) Where a Joint City Road Committee, by a majority of vote, settles a dispute, no appeal may be taken to the Joint Steel and Special Commodity Committee. Such a decision will be final and binding on both parties.

\* \* \* \* \* \*

(d) Failure of any Joint Committee to meet without fault of the complaining side, refusal of either party to submit to or appear at the grievance procedure at any stage, or failure to comply with any final decision withdraws the benefits of Article 43.

\* \* \* \* \* \*

"Section 2. It is further mutually agreed that the Local Union will, within two (2) weeks of the date of the signing of this Agreement, serve upon the Company a written notice, which notice will list the Union's authorized representatives who will deal with the Company, make commitments for the Union generally, and in particular, have the sole authority to act for the Union in calling or instituting strikes or any stoppages of work, and the Union shall not be liable for any activities unless so authorized. It is further agreed that in all cases of an unauthorized strike, slow-down, walkout, or any unauthorized cessation of work in violation of this Agreement, the Union shall not be liable for damages resulting from such unauthorized acts of its members. While the Union shall undertake every reasonable means to induce such employees to return to their jobs during any such period of unauthorized stoppage of work mentioned above, it is specifically understood and agreed that the Company during the first twenty-four (24) hour period of such unauthorized work stoppage shall have the sole and complete right of reasonable discipline

short of discharge, and such Union members shall not be entitled to or have any recourse to any other provisions of this Agreement. After the first twenty-four (24) hour period of such stoppage and if such stoppage continues, however, the Company shall have the sole and complete right to immediately discharge any Union member participating in any unauthorized strike, slow-down, walk-out, or any other cessation of work, and such Union members shall not be entitled to or have any recourse to any other provision of this Agreement \* \* \*."

Prior to petitioner's acquisition of Steel Transport the latter had maintained three methods of compensating its drivers. One of the variations in compensation involved "supplemental pay" for time spent loading and unloading trucks. Steel Transport's drivers were dissatisfied with these variations before petitioner's acquisition of Steel Transport and had complained to Local 142.

Petitioner continued Steel Transport's methods of compensation and the drivers' dissatisfaction continued. In November, 1965, some of the drivers engaged in an unauthorized strike to express their dissatisfaction with petitioner's methods of compensation and with the Local's failure to process a grievance on the matter. The strike ended after two days when Local 142 agreed to submit a grievance to the Central States Joint Steel and Special Commodity Committee. Among the leaders of the strike where employees Barbee, Colbert and Ravenscroft.

The Central States Joint Committee held a hearing on the grievance in December, 1965. It rendered a decision that all employees should be paid by the same method except that only those hired before March 31, 1965 should receive "supplemental pay." The Committee's decision did not allay the drivers' dissatisfaction. They continued to complain to petitioner and to the Local

about the variations in methods of compensation.

Prior to the filing of the grievance involving compensation methods the Local, in October, 1965, filed a grievance on behalf of drivers Barbee, Colbert, Ravenscroft and Walker. The drivers, who were drivers for Steel Transport prior to the time petitioner acquired it, complained that petitioner had run four Artim drivers around them at its Detroit terminal, causing them to lose work. They claimed approximately $200 in lost compensation.

Petitioner maintained that it had dispatched drivers in accordance with an arrangement made with Local 142 and other Teamsters Union locals in October, 1965. The arrangement, according to petitioner, was that the road divisions of Artim and Steel Transport would be "dovetailed" by dispatching drivers of both divisions on a first-in, first-out basis. The grievants denied the existence of such an arrangement.

A hearing on these "runaround" grievances was held on January 20, 1966 before the Calumet Joint Area Committee, a joint city road committee. Petitioner requested a postponement of the hearing because of the illness of its vice-president, Ralph Artim Jr., and the absence of an official from its Detroit terminal. The Committee denied the request, proceeded with the hearing and rendered an oral decision favorable to the grievants. A written decision was received by the parties on or about February 1, 1966.

On several occasions between January 20 and February 14 the drivers involved in the runaround grievance approached petitioner's treasurer, Bart Linder, and asked when the awards would be paid. There is considerable dispute concerning Linder's responses. According to Linder, he told the employees that he did not have authorization to pay the awards and that the matter would be resolved in a few days. According to two of the drivers, Linder told them the awards would not be paid because petitioner had a "different interpretation of the matter." The Trial Examiner credited the drivers' testimony and rejected Linder's.

On or about February 10 petitioner's vice-president, Ralph Artim Jr., called Donald Sawochka, secretary-treasurer of Local 142, and notified him that petitioner wanted a rehearing of the runaround grievance in order to present additional evidence. He told Sawochka that the Joint Committee's decision affected the operation of petitioner's two road divisions and that the matter needed to be cleared up. Sawochka told Artim to put the request for rehearing in writing and file it with the Committee. The testimony of Artim and Sawochka on these points was consistent.

On February 10, 1966, petitioner distributed copies of the Committee's decision to the four drivers involved. At the bottom of each copy was a typed notation that "This matter has been held in suspense pending clarification of the interpretation of the run-around as it applied to Detroit terminal. You will be notified as soon as possible concerning same."

At a regular meeting of the Local on February 11 the four drivers asked the officials of the Local what they were going to do about petitioner's noncompliance with the awards. The president of the Local was quoted as answering that "nobody had the right to go against the decision of their board." Andrew Sawochka, one of the Local's business agents, responded that he would take care of the matter when he met with petitioner's vice-president the following day.

On February 14, one of the drivers asked Linder about his award. Linder refused to pay the award and told the driver to call his union hall. The driver called the Local and was told by an unidentified person that the matter "hadn't been taken care of."

At about 9:00 p. m., on February 14, the former Steel Transport drivers initiated a strike and were later joined by

some of the former Artim drivers. According to Linder, the strikers' primary complaints were about the dual method of compensation approved by the Central States Joint Committee in December. According to the drivers, the primary complaint was the refusal by petitioner to pay the runaround grievance awards.

Petitioner sent telegrams to the strikers on February 15 advising them that the strike was in violation of the collective bargaining agreement, ordering them to report to work and notifying them that they would be discharged if they did not report. The strikers did not report and petitioner discharged them by telegram on February 16, 1966.

A union official and those strikers who testified agreed that officials of Local 142 were not consulted prior to the strike and did not become aware of it until sometime after it began. The Local at no time authorized or condoned the strike and made repeated efforts to get the strikers back to work.

Petitioner did not file a request for rehearing of the runaround grievance with the Calumet Joint Area Committee as the secretary-treasurer of Local 142 advised. At its February 24 meeting the Committee ordered petitioner to pay the awards. Petitioner did so on February 26. According to Linder it became unnecessary to seek a clarification of the Committee's original decision because the merger of the Artim and Steel Transport road divisions was completed prior to the expiration of time for filing a request for rehearing.

The strikers did not offer to return to work until the evening of March 15, the day on which the Central States Joint Committee refused the Local's request for a rehearing of the grievance on methods of compensation. Petitioner reinstated some of the drivers.

The striking drivers that petitioner refused to reinstate requested Local 142 to file a grievance concerning such refusal. After hearings the Executive Board of the Local declined to do so on the ground that the discharges were justified. The drivers appealed to higher authority within the union, which directed that the grievances be docketed with the Central States Joint Committee. That Committee refused to hear the grievances because the strike was unauthorized.

Unfair practice charges were filed by the drivers on February 17, 1966. A complaint issued and hearings were held on October 17, 18 and 19, 1966. The Trial Examiner found that the Joint Committee's January 20 decision on the runaround grievance was a final decision, that petitioner's conduct prior to February 14 constituted a refusal to comply with that decision, that petitioner's noncompliance was the sole and substantial reason for the strike and that the strike was supported by all over-the-road drivers directly employed by petitioner. The Trial Examiner concluded that the strike was within the exception to the no-strike provision withdrawing its benefits where the employer fails to comply with a final decision. He concluded that the strike was not in derogation of the status of the bargaining representative. He further concluded that the strikers were engaged in protected, concerted activity and that the discharges violated § 8(a) (1) of the Act.

The Board adopted the findings, conclusions and recommendations of the Trial Examiner (with modification of the remedy) but stated that it did not consider or decide whether the strike would have been protected if the no-strike provision of the agreement was applicable.

Petitioner challenges the finding that its nonpayment of the runaround award was the sole and substantial reason for the strike. It contends that the true cause of the strike was the drivers' general dissatisfaction with the dual methods of compensation being used and their dissatisfaction with the representation afforded by Local 142.

We do not agree with petitioner. The record as a whole contains substantial evidence supporting the Board's

finding. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456 (1951).

Petitioner also challenges the Board's "finding" that its conduct constituted a failure to comply with a final decision of the Joint Committee. The "finding" blends both contract interpretation and fact-finding.

The collective bargaining agreement explicitly provides that "there shall be no strike, lockout, [etc.] without first using all possible means of settlement, as provided for in this Agreement, of any controversy which might arise." The agreement enumerates several exceptions from the strike ban. It implicitly requires the submission of disputes to joint city road committees or, in some cases, to the Joint Steel and Special Commodity Committee. It also provides that the union's authorized representatives "have the sole authority to act for the Union in calling or instituting strikes or any stoppages of work * * *."

The manifest purpose of these provisions is to promote the peaceful settlement of industrial disputes by denying to both parties resort to their ultimate economic weapons and by requiring them to submit disputes to joint employer-union committees.

The agreement does not prescribe the procedures by which the joint committees are to consider disputes. Three of the witnesses heard by the Trial Examiner were members of the Calumet Joint Area Committee, which heard the runaround grievance. They testified that it is the practice of the Committee to entertain requests for rehearings on grounds of unfairness in the original hearing or discovery of new evidence. The request must be filed in written form with one of the joint chairmen of the Committee before the next regular meeting following the rendering of the original decision. The witnesses' testimony was uncontradicted and the Board made no contrary finding.

It is petitioner's position that the Joint Committee's decision on the runaround grievance did not become final until the time for filing a request for rehearing had expired. The next regular meeting of the Committee following the runaround decision was on February 24, 1966. If petitioner ˙ correct in its contention, the runaround decision was not final when the strike began on February 14, there had been no failure to comply with a "final decision", and the no-strike provision was applicable.

The Board's finding that petitioner had failed to comply with a final decision rested on five points.

First, the Board ruled that the January 20 decision of the Joint Committee was "final and binding under the terms of the Agreement." This conclusion is wholly unwarranted by the agreement. The provision that Joint Committee decisions shall be final and binding is contained in a paragraph that abolishes right of *appeal* to the Joint Steel and Special Commodity Committee in cases where the joint road committee "settles the dispute." The paragraph was not intended to regulate the procedures of the joint road committee, including its procedures for rehearing.

Second, the Board found that the finality of the January 20 decision was "affirmed to the parties at the hearing by the Committee." This is a gross distortion of the evidence. The testimony was that one member of the Committee,[1] in response to petitioner's question whether an appeal was available, answered that the decision was final and binding. The Trial Examiner found that "in the absence of a showing that any Committee member objected to the statement * * * it was a decision by the Committee," and that "the Committee, by its answer intended to convey the message that their decision was final and no further proceedings were warranted." There is no foundation in the

---

1. There is conflict concerning whether the member was an employer member or a union member.

record for attributing to a single, unidentified Committee member the authority to speak for the Committee. The Board's finding that this statement was a denial of rehearing is clearly unsupported.

Third, the Board found that, assuming the right to request a rehearing existed, petitioner failed to request it in the required written form. The finding is supported in the record, but is irrelevant. If petitioner had the right to file a request for rehearing prior to the Committee's February 24 meeting, the time for filing had not expired when the strike began. The fact that a written request was not filed subsequent to the beginning of the strike has no relevance to the employees' right to strike on February 14.[2]

Fourth, the Board found that petitioner knew the grounds for its request for rehearing were the same grounds presented at the original hearing in its request for postponement and rejected by the Committee. This finding lacks both relevancy and support in the record. There is no evidence in the record concerning the nature of the new evidence petitioner proposed to introduce at the rehearing. If petitioner had a right to request a rehearing, the sufficiency of the grounds asserted in support of that request was a question for the Joint Committee, not the Board.

Finally, the Board found that petitioner failed to advise the runaround grievants and other drivers that the suspension of payment was for the purpose of seeking a rehearing. Petitioner's neglect in this regard was both unfair and unwise. It could not, however, affect the finality of the Joint Committee's decision. There is no basis in the record for concluding that petitioner had a duty to notify the grievants of its intention to request a rehearing. It had notified the bargaining representative on February 10.

In finding and concluding that the January 20 runaround decision had become final the Board in effect ignored the substantial evidence on rehearing procedure. By the uncontradicted testimony of three witnesses, all of whom were members of the Joint Committee, petitioner had a right to request a rehearing. The Board did not reject this evidence, but found, in effect, that the normal rehearing procedures were inapplicable in this case.

On our interpretation of the collective bargaining agreement and our consideration of the record we conclude that petitioner had the right to request a rehearing by filing a written request with the Joint Committee prior to its February 24 meeting and that the Committee's January 20 decision was not final when the strike began.

There remains the question whether the strike violated the no-strike provision and justified petitioner's discharge of the strikers. Employees who violate their collective bargaining agreement, by violating a no-strike provision or otherwise, may be discharged. Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 280, 76 S.Ct. 349, 100 L.Ed. 309 (1956) (implication); NLRB v. Sands Mfg. Co., 306 U.S. 332, 344, 59 S.Ct. 508, 83 L.Ed. 682 (1939). The collective bargaining agreement recognizes the right of the employer to discharge employees engaging in an unauthorized strike or work stoppage, after twenty-four hours.

The strike does not fall into any of the express exceptions to the no-strike provision of the collective bargaining agreement. Neither does it fall into any of the judicially-developed exceptions to such contractual provisions. Compare Mastro Plastics Corp. v. NLRB, supra

2. Petitioner's failure to file the written request was explained by the testimony of its treasurer. He stated that the operational question involved in the runaround grievance—the order in which drivers of petitioner's Artim and Steel Transport divisions would be dispatched—was mooted by petitioner's complete integration of the two divisions into a single road division.

(unfair labor practice strike); NLRB v. Fruin-Colnon Construction Co., 8 Cir., 330 F.2d 885 (1964) (strike to protest dangerous working conditions); San Juan Lumber Co., 154 N.L.R.B. 1153 (1965) (strike to protest a fundamental breach of employer's obligation).

The strike was an unauthorized resort to economic force for the purpose of compelling petitioner to pay the runaround grievance awards before the awards became final. As such, it violated the agreement. The discharges were justified.

In holding that the Joint Committee's decision had not become final we are mindful that the original decision would have become final at a definite date unless a rehearing were granted[3] and that the period during which a request for rehearing could be filed was reasonably short. The grievance procedure prescribed in the collective bargaining agreement and in the practice of the Joint Committee provided a means for quickly settling labor disputes. There is nothing in the record that suggests petitioner was attempting to thwart that procedure or was otherwise acting in bad faith.

We are also mindful that compliance by petitioner with the original decision pending disposition of its request for a rehearing would not have been reasonable. The original decision awarded small sums of money to the grievants. Suspension of payment of those awards pending final decision was appropriate.

We need not consider petitioner's contention that the strikers were unprotected because they acted without prior authorization by their bargaining representative. See generally NLRB v. R.C. Can Co., 5 Cir., 328 F.2d 974 (1964); Western Contracting Corp. v. NLRB, 10 Cir., 322 F.2d 893 (1963); NLRB v. Sunbeam Lighting Co., 7 Cir., 318 F.2d 661 (1963); NLRB v. Draper Corp., 4 Cir., 145 F.2d 199, 156 A.L.R. 989 (1944).

For the foregoing reasons, the petition for review is granted and enforcement of the Board's order is denied.

Review granted; enforcement denied.

---

3. The record indicates that the Joint Committee ordered petitioner to pay the run-around awards when the time for filing a request for rehearing expired.